IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:09CR3112 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| JOSE MANUEL AVALOS | ) | |
| BANDERAS, | ) | |
| | ) | |
| Defendant. | ) | |

  Jose Manuel Avalos Banderas ("Avalos-Banderas") has filed a Motion to Vacate under 28 U.S.C. § 2255 supplemented by a Memorandum and Declaration. (Filings 100 and 101.) Avalos-Banderas asserts that his defense counsel was ineffective. (*Id*.) Pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings, I called for a response from the government. (Filing 103.)

  The government submitted a 21-page brief along with an Index of Evidentiary Materials including Exhibits A through N. (Filings 106 and 107.) Among other things, those exhibits included contemporaneous notes made by defense counsel.[1] In

---

[1]To the extent that Avalos-Banderas challenges the authenticity of defense counsel's notes or other exhibits submitted by the government, I deny the objection. Sara Fullerton, an Assistant United States Attorney, electronically signed the Index of Evidentiary Materials and that signature amounts to a certification that the documents are authentic to the best of the signatory's information and belief. Furthermore, before submitting the index, Ms. Fullerton separately represented to the Court that she was in consultation with defense counsel and that she had requested defense counsel provide her "information and/or documentation" responsive to the claims made by Avalos-Banderas. (Filing 104.) Still further, Avalos-Banderas has provided nothing more than speculation in support of his objection. Finally, the authenticity objection is not timely as it was not made within 7 days as required by our rules. *See* NECrimR 49.2(c)(1)(A)(ii). On July 11, 2012, I gave Avalos-Banderas leave to respond to the government's submission. (Filing 108.) Avalos-Banderas

turn, Avalos-Banderas submitted a Reply including his Declaration.[2] (Filing 112.) Like the government, Avalos-Banderas repeatedly asserts that an evidentiary hearing is unnecessary. For example, Avalos-Banderas argues in his Reply that there "is no need to hold an evidentiary hearing" (*id*. at CM/ECF p. 21) and he explicitly requests that "this Court . . . forego conducting an evidentiary hearing . . . ." (*Id*. at CM/ECF p. 22.)

While I agree with Avalos-Banderas that an evidentiary hearing is unnecessary, I disagree that his claims have merit. Indeed, they border on frivolous. Accordingly, for the reasons set forth below, the section 2255 motion is denied with prejudice.

## I. BACKGROUND

Avalos-Banderas was convicted and sentenced to 365 months in prison after a jury found him guilty of conspiring to distribute and possess with intent to distribute at least 500 grams of a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 841 (a)(1), (b)(1). At trial, at sentencing, and on appeal, Avalos-Banderas was represented by John Aman ("Aman"). Aman is a very experienced and zealous lawyer who was appointed by the court.

After the trial, but before he was sentenced, Avalos-Banderas was also represented by Stuart Dornan ("Dornan") for a short period of time when Aman became ill. (Filing 53.) Like Aman, Dornan is a very experienced and zealous

---

response was not signed until two weeks later (i.e. July 25, 2012). (Filing 112 at CM/ECF p. 23.)

[2]Under our rules, the Declaration should <u>not</u> have been filed with the brief but should have been filed separately with the required evidence index. *See* NECrimR 12.3 (b)(2) and NECrimR 49.2(a)(2). However, given the pro se status of the defendant, I overlook that deficiency.

lawyer. Dornan's background includes service as an FBI agent and as the chief prosecutor (County Attorney) for Nebraska's largest county.

Dornan filed various motions regarding sentencing including an assertion that "Defendant denies any involvement with methamphetamine." (Filing 57 at CM/ECF p. 1.) Before sentencing, and after Aman recovered, Dornan was granted leave to withdraw. (Filing 64.) Avalos-Banderas makes no claims against Dornan.

Avalos-Banderas received an obstruction of justice enhancement for threatening trial witnesses. (Filing 71 at CM/ECF pp. 10-11 (Presentence Investigation Report ("PSR") ¶¶ 39, 46).[3]) Avalos-Banderas was held responsible for between 5 and 15 kilos of methamphetamine. (*Id*. at CM/ECF p. 11 (PSR ¶ 42).) His criminal history score was III and that score was generated by two particularly violent crimes against a woman for which he was serving a state prison sentence. (*Id*. at CM/ECF pp. 12-13) (PSR ¶¶ 52-55).)

Avalos-Banderas' Guideline range was 292 to 365 months in prison. (Filing 72.) I imposed a sentence of 365 months in prison, consecutive to the state prison sentence, because I was "absolutely persuaded that the defendant is a dangerous individual" who "will harm someone . . . if he is not incapacitated for a very long time . . . ." (Filing 89 at CM/ECF p. 61.)

Aman prosecuted an appeal, but Avalos-Banderas' conviction and sentence were affirmed. *United States v. Banderas*, 411 Fed. App'x 932, 2011 WL 755758 (8th Cir. 2011) (determining, among other things, that (1) the evidence was sufficient to support the conviction; (2) the "evidence at the sentencing hearing amply supports

---

[3]After a lengthy evidentiary hearing, I found that Avalos Banderas threatened three trial witnesses. Avalos-Banderas threatened Omar Gonzalez and his child, he threatened Kelly Jeffrey, and he threatened Marcus Richardson. (Filing 89 at CM/ECF pp. 56-57.)

the court's conclusion that Banderas engaged in conduct warranting the obstruction-of-justice enhancement when he made threatening statements during his trial to the witnesses testifying against him"; (3) the district court properly counted two prior sentences for criminal conduct that was separated by an intervening arrest; and (4) the sentence was not procedurally deficient or substantively unreasonable).

Immediately before jury selection, I held a hearing on Avalos-Banderas' request for a new lawyer. (*See* Filings 28 and 111.) Aman provided a detailed explanation of Avalos-Banderas' request for a new lawyer, Avalos-Banderas' demand for a speedy trial and Aman's efforts while representing Avalos-Banderas.

> THE COURT: Our interpreters who've previously . . . been sworn are present physically.
>
> Mr. Aman, you were kind enough to tell me in our pretrial meeting this morning that you wished to make a record of something. You my do so, sir.
>
> MR. AMAN: Yes, sir. Your Honor, number one, Mr. – the defendant, Jose Banderas Avalos, it's my understanding he prefers to be called Avalos, but we can do it either way, but I wanted to make a record of that.
>
> But second of all and more importantly is in my last discussion with Mr. Banderas Avalos, he requested that I withdraw.
>
> He wants to -- he wanted to talk to the court about getting a new attorney and he had some complaints about the way I was doing things.
>
> For the record at this point I want to make sure that -- I want to tell the court that I have gone through all of the discovery, especially the police reports, with Mr. Banderas.
>
> I have read him line for line or summarized each paragraph, each sentence, and I have gone through the plea agreement and explained to

him what a petition to plead is, although I've not read those line by line, of the various potential witnesses that the government has produced.

I've also been through what a plea agreement is, a cooperating and non-cooperating plea agreement.

And that I've also gone through with him and explained to him what each potential witness, what their position is on a plea agreement.

And I've also gone through with him what a proffer letter is and we have -- I've showed him that each of the potential witnesses that I believe that Ms. Fullerton and the government is going to call have those proffer letters, although I have not read those proffer letters but for one to him.

In addition, and very unusually, but I've gotten permission from Ms. Fullerton to give to Mr. Avalos all of the police reports.

And I have not given him the proffer letters or the petition to plead or the plea agreements, but we have been over them.

And I have discussed with him, read to him and shared with him all of the evidence in paper form that we have.

I was just able to get the recorded, see the CDs that Ms. Fullerton, the government, provided for me just at the end of last year.

I was able to listen to those this last weekend. I discussed with Mr. Banderas when I knew I was going to get them what Ms. Fullerton had told me was on those audio recordings, and Ms. Fullerton of course told me the truth and so he does know what is going on there.

I want to make a record that I have given him all the information that I have before proceeding today.

We have discussed it, and he does want a speedy trial.

>That's the other matter that I want to be sure I put on the record.
>
>He has sent me three letters. Each one of those letters has requested that I come see him or -- and he insisted that I file a motion for speedy trial.
>
>And I have explained to Mr. Banderas Avalos that he was just arraigned on November 3rd I believe and this is now January 4th and that's pretty speedy and I can't get it to move any faster than that.
>
>So he's here for a speedy trial. He wanted me to file that motion.
>
>I did not file that motion because I believe this was the earliest possible date the court could hear the case.
>
>THE COURT: Mr. Aman, are you satisfied that you can zealously and adequately represent your client in the trial today?
>
>MR. AMAN: Absolutely, Your Honor.

(Filing 111 at CM/ECF pp. 2-5.)

I gave Avalos an opportunity to respond. The following ensued:

>THE COURT: Mr. Avalos, you have a right to speak, sir. You're not obligated to speak. If you do say anything, what you say could harm you.
>
>But if you have something you want to bring to my attention now regarding your complaints about your lawyer, feel free to bring them to my attention.
>
>Do you have anything you want to say, sir?
>
>THE DEFENDANT: Yes.

> THE COURT: Go ahead.
>
> THE WITNESS: I want to say that my life is in his hands and that he has . . . lied to me on several occasions.
>
> And when I want to establish contact with him they do not give me his address.
>
> And I want to say, why has he lied to me, and the people that are talking about me, I don't even know some of these people and then I said to him do I have a right to have another attorney and he answered no.
>
> And they said that they had me on a wire and controlled buys.
>
> And I asked for the name of the police officer, and the first time he gave me one name, and twenty minutes later he changed the name of the police officer.
>
> And that is why I want to know the truth, because 20 years, really, is my life.
>
> And then one time when I wanted to speak with him, he said that he would be unavailable because it was New Years, and that is all.

(*Id*. at CM/ECF pp. 5-6.)

After the defendant spoke, and regarding Avalos-Banderas' concern about receiving the names of two police officers from Aman rather than only one name, Aman informed me that there were in fact two police officers whose names were responsive to Avalos-Banderas' questions. Aman provided both names to Avalos-Banderas. (*Id*. at CM/ECF p. 6.) Avalos-Banderas made no effort to dispute that assertion.[4]

---

[4] I denied Avalos-Banderas' request for a new lawyer. Accordingly, the trial proceeded as scheduled.

As pertinent to Avalos-Banderas' claim that Aman was ineffective, it is noteworthy that, when given the chance, Avalos-Banderas did not deny Aman's detailed recitation of what he had done while representing Avalos-Banderas. Instead, Avalos-Banderas asserted that Aman had lied to him on several occasions but Avalos-Banderas provided no details or substantiation of any kind. It is also worth noting that Avalos-Banderas expressed no desire to admit his guilt. On the contrary, Avalos-Banderas told me that "I don't even know some of these people . . . ." Likewise, he did not dispute Aman's statement that Avalos-Banderas was demanding a speedy trial. Furthermore, Avalos-Banderas expressed no problem whatsoever in communicating with Aman.

As necessary, additional facts will be discussed as I address the merits. With that in mind, I next discuss the substance of Avalos-Banderas' section 2255 motion.

## *II. ANALYSIS*

Avalos-Banderas argues that Aman was ineffective. Therefore, the *Strickland* standard must be applied. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (announcing principles for evaluation of claims of ineffective assistance of counsel under the Sixth Amendment).

In order to prevail on a claim that defense counsel rendered ineffective assistance of counsel under *Strickland*, the claimant must establish two things. He or she must establish (1) that "'counsel's representation fell below an objective standard of reasonableness,'"[5] and (2) that "'there is a reasonable probability that, but for

---

[5] A judge's "scrutiny of counsel's performance must be highly deferential" and the judge must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Reed v. United States*, 106 F.3d 231, 236 (8th Cir. 1997). In other words, a judge should make "every effort" to "eliminate the distorting effects of hindsight" by examining the lawyer's performance from "counsel's perspective at the time" of the alleged error. *Strickland*, 466 U.S. at 689.

counsel's unprofessional errors, the result of the proceeding would have been different.'"[6] *Nguyen v. United States*, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting *Strickland*, 466 U.S. at 688, 694.)

The Supreme Court has now made clear that *Strickland* applies to ineffective assistance of counsel claims having to do with plea bargaining. *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) (reaffirming that the *Strickland* standard applies to plea bargaining even where the defendant has received a full and fair trial; holding, among other things, that where counsel's ineffective advice led to an offer's rejection, and where the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed); *Missouri v. Frye*, 132 S. Ct. 1399 (2012) (elaborating upon *Strickland*, and, among other things, holding that to establish prejudice as an element of a claim of ineffective assistance, where a plea offer has lapsed or been rejected because of counsel's deficient performance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time).

An evidentiary hearing is unnecessary if the claimant makes an insufficient preliminary showing on either or both prongs or the record clearly contradicts the claimant's showing on either or both prongs. *Engelen v. United States*, 68 F.3d 238,

---

[6] A "reasonable probability" is less than "more likely than not," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), but is more than a possibility. *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005). It must be compelling enough to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

In general, it is sufficient to state that the files and records plainly show that Avalos-Banderas is not entitled to relief. So as not to unduly extend the length of this opinion, I will separately discuss Avalos-Banderas' main claim dealing with a plea bargain issue, and then summarily address the other claims.

*Plea Bargain Claim*

Condensed and summarized, Avalos-Banderas argues that Aman was ineffective because Aman gave him inadequate advice about a plea bargain. (Filing 101 at CM/ECF pp. 9-15.) However, the record does not support this claim when considered in light of the two *Strickland* prongs.

The record plainly shows that Aman discussed the government's plea bargain offer with Avalos-Banderas and that he declined the offer after being adequately advised of the relevant factors. For example, Aman's contemporaneous notes reflect that on December 30, 2009, Aman had a meeting with Avalos-Banderas at the state prison. (Filing 107-3 at CM/ECF pp 1-6.) Among other things, those notes show Aman and Avalos-Banderas had a conference that lasted more than three hours during which they discussed "new disc[overy]," "possible defenses,"[7] "probable" and "possible jail time," a "speedy trial" and the "applicable law." (*Id.* at CM/ECF p. 1.)

---

[7]On November 25, 2009, Aman's notes show that he spent more than 4 hours going over the Rule 16 materials with the case agent and that conference included a discussion regarding eight of the cooperating witnesses. (Filing 107-1.)

Those notes also show that Avalos-Banderas "refused" the written non-cooperation plea agreement offered by the government–that agreement would have recommended that Avalos-Banderas' base offense level be set at 36 with no agreement on criminal history. (*Id*. at CM/ECF pp. 2-6.) Therefore, there is simply no basis for claiming that Aman's representation regarding the plea offer was deficient.

Moreover, and regarding the issue of prejudice, there is no reason to believe that Avalos-Banderas would have entered a guilty plea had Aman done something different. In fact, until the filing of the 2255 motion, Avalos-Banderas consistently maintained his innocence and directed his lawyers to proceed accordingly throughout the criminal case and on appeal.

For example, Aman's notes of December 30, 2009, reflect that Avalos-Banderas said that the government witnesses were "talking shit." (*Id*. at CM/ECF p. 1.) Furthermore, and as indicated earlier, Dornan filed a sentencing statement on behalf of Avalos-Banderas representing that "Defendant denies any involvement with methamphetamine."[8] (Filing 57 at CM/ECF p. 1.) Avalos-Banderas makes no claim against Dornan and Avalos-Banderas does not argue that Dornan misrepresented his true position. Still further, and regarding his appeal, Avalos-Banderas wrote Aman and again expressed his innocence, stating things like "I know that I never physically handled such drugs nor passed on any such drugs to no one."[9] (Filing 107-7 at CM/ECF p. 4). Finally, and perhaps most illustrative of his intransigence, Avalos-Banderas' behavior in threatening three trial witnesses proves beyond doubt that he had

---

[8] In a complete turn around, Avalos-Banderas now falsely claims under oath that "I never insisted that I was innocent of buying, selling, or using meth . . . ." (Filing 101 at CM/ECF p. 38 (¶ 18).)

[9] This is another demonstrably false statement. An undercover police officer testified at trial that she witnessed Avalos-Banderas' participation in a hand-to-hand transaction involving 3.5 grams of methamphetamine and $300. (Filing 50 at CM/ECF pp. 19-37.)

no interest whatsoever in accepting responsibility for his actions and admitting his guilt.

An additional word about "prejudice" is in order. I sentenced Avalos-Banderas to a much longer prison sentence than I might have sentenced an otherwise similarly situated offender because I thought he was extremely dangerous. He threatened three trial witnesses and his criminal history demonstrated that he was perfectly willing to hurt people with whom he had disagreements. In fact, Avalos-Banderas was then in prison for his violent conduct. No matter what, the increased punishment that I imposed cannot be attributed to Aman; Avalos-Banderas suffered that "prejudice" solely as a result of his own aggressive behavior.

Avalos-Banderas makes various assertions about why Aman's handling of the plea offer was deficient and why he was prejudiced, including that he did not have enough time to consider the offer, did not know enough about "relevant conduct," and did not understand the law of conspiracy. (Filing 101 at CM/ECF pp. 13, 38-39; Filing 112 at CM/ECF pp. 3-4.) Avalos-Banderas also asserts that he surely would have accepted the plea offer had things been better explained because he probably would have received a lesser sentence had he accepted the offer. (Filing 101 at CM/ECF pp. 10, 14, 39; Filing 112 at CM/ECF pp. 3-4.)

I reject all of these excuses. They are merely "could have, should have, and would have" rationalizations made with no credible[10] supporting facts. Moreover, these arguments are obviously based upon the "distorting effects of hindsight" that the Supreme Court has cautioned against relying upon to upend a conviction or sentence.

In summary, Aman's performance regarding the plea offer was perfectly fine. But, even assuming for the sake of argument that Aman's representation was deficient,

---

[10]The government's brief does a good job of collecting the numerous false and inconsistent statements made by Avalos-Banderas in an effort to obtain relief.

Avalos-Banderas has failed to show any prejudice. It is a certainty that he would have never accepted any deal short of an outright dismissal.

*The Other Claims*

Avalos-Banderas presents a hodgepodge of additional ineffective assistance of counsel claims. None of them have merit. I turn to those arguments which warrant some, albeit brief, discussion.

Avalos-Banderas attacks Aman for not using an interpreter. (Filing 101 at CM/ECF pp. 15-16, 39; Filing 112 at CM/ECF pp. 11-13.) This claim is particularly spurious. The record is replete with letters and pleadings submitted to me or the Court of Appeals prior to the 2255 motion that were written in English and signed by Avalos-Banderas. Avalos-Banderas now claims that prison "writ" writers authored those earlier documents, and he is not responsible for them. If that is so, the same problem now appears with Avalos-Banderas' written excuses that also appear in English. How am I to determine which filings accurately represents Avalos-Banderas' thoughts and which are the product of "writ" writers whose writings do not accurately represent his views? Avalos-Banderas offers no explanation because Avalos-Banderas' assertions are untrue.

The claim that Avalos-Banderas needed an interpreter to confer with Aman is plainly contradicted by the record. When given the chance to explain his problems with Aman at the hearing held before me on the day of trial, Avalos-Banderas, *with the assistance of an interpreter*, made no mention of being unable to effectively communicate with Aman.[11] Still further, and critically, the record reflects that Avalos-Banderas can adequately read, write and speak the English language as indicated by

---

[11] It is true that an interpreter was used as a trial. That fact does not, however, prove anything with regard to Avalos-Banderas' ability to confer with his counsel or to communicate with others in a setting less formal than a trial.

-13-

the trial testimony of two police officers and others. (*See, e.g.,* Filing 51 at CM/ECF p. 26: 5-15 (Investigator Ripley) (conversation during undercover drug buy); *Id*. at CM/ECF pp. 99-7-15, 100-104:15 (Investigator Snoad) (conversation during interview requested by Avalos-Banderas and *Miranda* waiver).[12])

Next, Avalos-Banderas claims he had insufficient or inadequate access to discovery materials. (Filing 101 at CM/ECF pp. 17-18; Filing 112 at CM/ECF pp. 13-16.) I reject that assertion because the record plainly shows otherwise. At the hearing on Avalos-Banderas' motion for a new attorney, Aman carefully detailed the discovery materials he provided or described to Avalos-Banderas; Avalos-Banderas did not dispute Aman's description. (Filing 111 at CM/ECF pp. 2-5.) Aman's notes and e-mail correspondence between Aman and the prosecutor also show that Aman was thoroughly describing to Avalos-Banderas the evidence against him. (*See, e.g.,* Filings 107-2 and 107-4.) There is simply no doubt that Avalos-Banderas knew what the government's evidence was going to be at trial. In fact, Avalos-Banderas fails to detail what specific discovery he needed but was not provided.

Avalos-Banderas additionally claims that Aman was ineffective because he did not file a motion for a bill of particulars. (Filing 101 at CM/ECF pp. 18-20; Filing 112 at CM/ECF pp. 16-17.) This argument is silly. The file reflects that the government gave Aman unfettered access to its files, and Aman shared that information with Avalos-Banderas. There was no need for a bill of particulars and no judge in our court would have granted one.

Avalos-Banderas argues that Aman should have filed a motion in limine to exclude the testimony of Kelly Jeffrey about Avalos-Banderas' call to Rachel Stokey asking her to contact "Pony" to get money to bond him out of county jail. (Filing 101

---

[12]The government's brief collects the numerous other citations to the record where it is made clear that Avalos-Banderas reads, writes and understands the English language.

at CM/ECF pp. 20-22; Filing 51 at CM/ECF p. 23-24.) Because this evidence was both relevant and not overly prejudicial, I would have never granted such a motion and therefore Aman could not have been deficient. Moreover, given the strong evidence against Avalos-Banderas, the failure to file such a motion would not have changed the outcome even assuming that some judge might have granted a motion in limine on this point.

Avalos-Banderas complains that Aman should have challenged the composition of the jury, objected to the government's use of its peremptory challenges, and requested a poll of the jury. I reject each of these arguments as simply more "make weight" type complaints.

The jury composition argument fails for several reasons including most especially that our jury selection plan was in full compliance with requirements of the law[13], because there has been no showing that any racial or ethnic group was systematically excluded and because the jury composition argument has been defaulted

---

[13] The plan under which Avalos-Banderas was tried has been upheld despite a "fair-cross-section" attack. *See United States v. Sanchez*, 156 F.3d 875, 879 (8th Cir. 1998) (holding absent proof that certain racial or ethnic groups faced obstacles in voter registration process, statistics showing that African–Americans, Hispanics, Asian–Americans, and Native Americans were less represented on jury wheels than in the general population were not sufficient to establish violation of Sixth Amendment's fair-cross-section requirement based on district court's method of jury selection, under which potential jurors in the district were drawn exclusively from voter registration lists of each of Nebraska's ninety-three counties). Our plan has now been further broadened. *See Plan for Random Jury Selection for the District of Nebraska*, § 5, http://www.ned.uscourts.gov/internetDocs/jury/NebrJuryPlan.pdf. It was approved by the Eighth Circuit Judicial Council on March 3, 2010. The amended plan provides that all persons who are registered to vote, who hold driver's licenses or who have state-issued identification cards are potential grand and petit jurors.

since it was not raised on direct appeal.[14] *See, e.g.*, *United States v. Moore*, No. 4:09CR3091, 2012 WL 1975385, at *2 (D. Neb. June 1, 2012) (discussing relevant law and denying section 2255 motion attacking, on "fair-cross-section" grounds, conviction of a black male). The *Batson*[15] argument fails because there is no showing that any of the government's challenges were motivated by race or ethnicity. The polling argument fails because there is no showing that any of the jurors were uncertain. *See*, *e.g.*, *United States v. Costa*, 691 F.2d 1358, 1363-1364 (5th Cir. 1982) (concluding failure of defendant's trial counsel to poll the jury did not constitute ineffective assistance, where there was nothing in the record to indicate any juror was uncertain of the verdict). After all, the jury verdict form (which all counsel agreed, in the presence of Avalos-Banderas, was proper) required the foreperson to attest in writing that the jury's verdict was unanimous. (Filing 41 (verdict form with foreperson's signature redacted) ("The Foreperson shall sign and date the verdict form, and such signature shall mean that the verdict of the jury was unanimous."); filing 42 (foreperson's signature).)

Avalos-Banderas asserts that Aman erred because he failed to challenge defendant's criminal history category of III.[16] (Filing 101 at CM/ECF p. 38; Filing 112 at CM/ECF pp. 19-20.) As noted earlier, the Eighth Circuit Court of Appeals specifically addressed the criminal history issue on appeal that Avalos-Banderas now uses as a predicate for his ineffective assistance of counsel claim. Avalos-Banderas cannot relitigate that issue in this section 2255 proceeding. *See Davis v. United States*,

---

[14] It made no sense to raise this issue on appeal because the Nebraska plan had survived an earlier attack. *See*, *e.g.*, *Peltier v. United States*, 867 F.2d 1125, 1126 (8th Cir. 1989) ("There is no reason here to question the selective judgment of . . . appellate counsel, particularly since past discrimination claims against this District's jury selection plan have proved unsuccessful.").

[15] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[16] Avalos-Banderas may have withdrawn this claim in his reply brief. (Filing 112 at CM/ECF pp. 19-20.) For the sake of completeness, I address it anyway.

673 F.3d 849, 852 (8th Cir. 2012) (claims that are raised and decided on direct appeal cannot be relitigated on a subsequent motion to vacate). Moreover, the Eighth Circuit Court of Appeals has conclusively determined that Aman made no error in failing to challenge the criminal history issue because it determined that the criminal history score was correctly calculated. *Banderas*, 2011 WL 755758, at *1.

Finally, Avalos-Banderas argues that Aman failed to obtain a full transcript before filing the appellate brief. (Filing 101 at CM/ECF pp. 31-32; Filing 112 at CM/ECF p. 20.) Because a trial transcript was ordered and appears of record prior to the briefing date, Avalos-Banderas is apparently arguing that Aman should have had the jury selection or sentencing proceedings transcribed. Noting that the jury selection and sentencing proceedings were captured by digital audio recording (filing 28 beginning at 7:59; filing 67; filing 68) which were immediately available to Aman and the Eighth Circuit Court of Appeals and noting further that the Eighth Circuit Court of Appeals later ordered a transcript of the sentencing proceeding, Avalos-Banderas has failed to show how he was prejudiced by this alleged error. Still further, Aman was not required to order every conceivable transcript. He was required to order only those transcripts, if any, that a reasonable lawyer, objectively judged, would have ordered to adequately prepare for appeal. Avalos-Banderas has not come close to showing that Aman's decision violated the relevant standard of care.

### III. CONCLUSION

The files and records plainly show that Avalos-Banderas had the assistance of a dedicated lawyer who performed competently. Even if that were not the case, he has failed to show prejudice.

Accordingly,

IT IS ORDERED that

1.  The Motion to Vacate under 28 U.S.C. § 2255, supplemented by a Memorandum and Declaration, (filings 100 and 101) is denied and dismissed with prejudice.

2.  A separate judgment will be issued.

August 22, 2012.                    BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.